**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Allen Adams, | CV 07-01188-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff's motion for summary judgment or in the alternative remand and Defendant's motion for summary judgment are pending before the court. (Docs. #22 & #24.) The court will grant Plaintiff's alternative motion for remand and deny both summary judgment motions.

**I.     Factual and Procedural Background**

    **A.     Factual Evidence**

On April 10, 2002, Plaintiff Leslie Allen Adams was injured and subsequently diagnosed with spondylosis (spinal degeneration) and small disc herniation. (AR 125-26, 142-45.) On December 12, 2002, after eight months of unsuccessful treatment by steroid injections and narcotic pain medication, orthopedic surgeon Dr. Gary L. Lowery performed a lumbar fusion on Adams. (AR 134, 138-41.) After the surgery, the diagnosis remained lumbar spondylosis with radiculopathy. (AR 140.)

1    On February 5, 2003, Dr. Lowery noted Adams' low back pain had improved to
2 six to seven (out of ten), he required pain medication only occasionally and sometimes
3 was off medication for two to three day periods. (AR 178.) The doctor further noted he
4 would prescribe physical therapy and Percocet. (*Id.*)

5    On March 26, 2003, Dr. Lowery's notes state that Adams was "feeling pretty well,
6 doing well," and "He does need to take pain medicine p.r.n. braces, but does not have any
7 more at this time." (AR 175.) Dr. Lowery also noted he would get Adams started on
8 some physical therapy and "get some pain medicines." (*Id.*)

9    On May 30, 2003, Adams was seen by Dr. Rajiv Parikh. (AR 227-28.) Dr.
10 Parikh's notes indicate Adams reported chronic low back pain, insomnia, use of Percocet
11 one or two times per week, and walking about a mile once a week. (AR 227.) The notes
12 also indicate Adams denied any significant tingling, numbness, or weakness in his legs.
13 (*Id.*) Dr. Parikh prescribed Percocet and Pamelor (nortriptyline) and ordered Adams to
14 continue his home exercise program. (*Id.*)

15    On June 17, 2003, Dr. Lowery signed a form stating that in his medical opinion
16 Adams had a physical incapacity that prevents him from performing any substantially
17 gainful employment and that Adams had a physical impairment expected to last for a
18 continuous period of at least twelve months. (AR 222.)

19    On July 11, 2003, Adams reported that his condition had not changed since April
20 21, 2003. (AR 114-15.) He said he was taking Percocet once or twice a day, two aspirin
21 daily, and four ibuprofen (200 mg.) daily. (AR 115.)

22    On July 17, 2003, Adams' live-in companion Lisa Sandvig completed an Activities
23 of Daily Living Questionnaire to Third Party regarding Adams. (AR 116-122.) Ms.
24 Sandvig stated that at that time Adams occasionally performed light household chores
25 such as washing dishes, cooked daily, drove weekly, cleaned the house monthly, read and
26 watched television daily, and talked on the telephone weekly. (AR 116, 119.) She
27 indicated he was unable to travel. (AR 117, 119.)

28

1    On July 23, 2003, Dr. Lowery noted Adams had "some continued low back pain"
2 and that Adams had not been taking medication for the pain because he had been
3 incarcerated. (AR 220.) Adams reported that he had no radiculopathy or other medical
4 symptoms at that time. (*Id.*) Dr. Lowery further noted that Adams still needed some
5 medication for pain and to be able to sleep at night and that Dr. Lowery would like to
6 switch Adams to Darvocet from Vicodin, which made Adams nauseated. (*Id.*)
7    On September 29, 2003, Adams requested additional physical therapy. (AR 217.)
8    On October 24, 2003, Dr. Parikh's notes indicate Adams reported that his low back
9 pain was constant, and it was worse with prolonged sitting or standing. (AR 225.)
10 Adams had no associated numbness, tingling, or weakness. (*Id.*) Dr. Parikh prescribed
11 Desyrel to replace the Pamelor and also Percocet and a Lidoderm patch. (*Id.*)
12    On January 6, 2004, Dr. Parikh's notes indicate Adams reported that his back pain
13 was better since surgery, but he had taken pain medications occasionally when he had
14 stressed his back. (AR 223.) Dr. Parikh noted Adams had tenderness over his left sacral
15 spine and coccyx and has difficulty walking. (*Id.*) Adams requested a prescription for
16 pain medication because he would be taking a long driving trip to Mississippi. (*Id.*) Dr.
17 Parikh prescribed Percocet. (*Id.*)
18    In January 2004 Adam rode with Ms. Sandvig to Mississippi by car to attend to a
19 legal matter. (AR 372.) According to Ms. Sandvig, during the two-day trip, they stopped
20 approximately every two hours to permit Adams to get out of the car and move around,
21 and they stayed at a motel twelve hours so that Adams could rest. (*Id.*) During the trip,
22 Adams used a sacral seat support cushion and an auto heating pad, took Percocet, and
23 frequently changed his position. (*Id.*) Ms. Sandvig stated that during the 26-hour return
24 trip Adams slept much of the way although he woke frequently to change positions and
25 take medication. (*Id.*) She also stated that after returning from the trip, Adams spent
26 most of the next five days lying on a sofa, and when he moved, he appeared to be in
27 significant discomfort. (*Id.*)
28

On February 5, 2004, occupational therapist Mary Louise Hymen completed a functional capacity evaluation of Adams to document his physical condition for a family court matter. (AR 398.) She reported that Adams could independently perform daily living activities, but had difficulty with shoes and socks, and that he had reported his most difficult posture is sitting and most difficult movement patterns as bending and lifting. (AR 209.) Adams rated his pain level as six to seven. (AR 211.) Adams was able to walk on flat surfaces easily and for significant distances, but had difficultly pushing, pulling, carrying, and sitting. (*Id.*) He had significantly reduced back range of motion and strength. (*Id.*) Ms. Hymen concluded Adams' decreased functional status limited his employment options, and although his physical demand characteristics of work rated in the sedentary level, he was unable to sit for more than 15 minutes at a time. (AR 211-12.) She doubted he would be able to work a full eight-hour day given his pain levels. (AR 212.)

On February 19, 2004, Adams reported he was taking Percocet (5 mg.) two or three times a day. (AR 124.)

On February 25, 2004, Dr. Lowery examined Adams and noted he had pain in his tailbone and low back pain reported as zero to one (out of ten). (AR 393.) Adams appeared to be "somewhat in discomfort all the time" and became fatigued when he did too much and when he bent over. (*Id.*) He was able to ride his bike, which seemed to help. (*Id.*) Dr. Lowery assessed Adams' condition as "lumbar spondylosis with radiculopathy (721.3)." (*Id.*)

On March 19, 2004, Dr. Lowery provided assessments of Adams' medical condition for the periods of April 10, 2002 to December 1, 2002, and December 1, 2003[1] to March 19, 2004. (AR 251-56.) For the first period, Dr. Lowery assessed Adams as being able to work zero hours per day, needing to change position continuously, being

---

[1] Adams' counsel did not request Dr. Lowery's evaluation for the period between December 1, 2002, and December 1, 2003. (Doc. #23, ¶ 27.)

able to sit, walk, or stand no more than ten minutes per day, and not being able to lift or carry any amount of weight. (AR 253.) Dr. Lowery said that pain likely would limit Adams' activities, and Adams was not able to work at all. (AR 254.) For the second period, Dr. Lowery assessed Adams as being able to work one to two hours per day and four to ten hours per week, still needing to change position continuously, and being able to occasionally lift or carry weights up to twenty pounds. (AR 255.) Dr. Lowery said that pain continued to limit Adams' activities, and Adams was likely to be absent from work more than four days per month as a result of his impairments. (AR 256.)

On May 11, 2004, Dr. John Duggan saw Adams for an orthopedic consultation regarding left knee swelling and pain. (AR 390.) On August 24, 2004, Dr. Duggan examined Adams again and noted Adams had recently experienced increased back pain, but had no specific back re-injury and no leg pain. (AR 387.) Dr. Duggan noted that Adams "needs to continue to watch what he does and how he does it," continue to take naproxen daily, and take arthritis-strength Tylenol in addition as needed. (*Id.*)

On April 5, 2006, Dr. Bogdan N. Anghel, a pain management and rehabilitation specialist, examined and diagnosed Adams with failed back surgery syndrome, residual lumbosacral musculoskeletal dysfunction, non-organic pain signs, and opiate dependence. (AR 385.) Dr. Anghel observed that Adams was able to perform full squats without assistance, had good strength on manual muscle testing in numerous areas, but his lumbar range of motion was limited. (AR 384.) Dr. Anghel listed Adams' current medications as Nortripyline, Percocet/Oxycodone, Clonapam, Levitra, Ibuprofen, Trilisate, and Soma. (AR 383.)

On May 22, 2006, Adams testified that since August 2003 he had experienced constant mild or moderate pain that required him to frequently change positions. (AR 429-30.) Adams said he can sit about 20 minutes or stand about 20-30 minutes before needing to change his position. (*Id.*) He said he is able to walk, but walking does not reduce his pain, it just changes it. (AR 430-31.) He also said he lies down once or twice an hour to try to reduce the pain. (AR 431.) Adams further testified that he does not

"take any kind of pain meds other than Advil or something like that" because they "can't be conducive to living a healthy life because you don't need them every day to get around and I need to see how I really am." (AR 432.) Adams testified he is able to take the garbage out, ride a bicycle, and use his arms and hands. (AR 433.)

### B. Procedural History

Adams protectively filed an application for Social Security Disability Insurance Benefits ("Benefits") on December 20, 2002, alleging disability since April 10, 2002, due to a spinal condition. (AR 59-63, 65, 86.)

On March 26, 2004, Administrative Law Judge ("ALJ") Michael J. Cianci, Jr., issued a partially favorable decision in Adams' case. (AR 323-334.) Upon reviewing all the evidence of record, the ALJ concluded that during the period beginning April 10, 2002, through December 12, 2003, Adams "exhibited impairments which made it impossible for him to do any prior work or make an adjustment to other work, as his impairments prevented him from performing even sedentary work on a sustained basis." (AR 328.) The ALJ further found that beginning December 12, 2003, Adams "exhibited the ability to perform sedentary work and was no longer disabled within the meaning of the Social Security Act." (*Id.*) The ALJ found that the "medical evidence indicates that the claimant has disorders of the back, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (AR 329, 331.) The ALJ found that the notes of the treating doctor and the functional capacity evaluation by an occupational therapist supported a conclusion that Adams "was unable to perform even sedentary work before the surgery on December 12, 2002 and for one year afterwards, which was a sufficient period for recovery after surgery." (AR 330.) The ALJ further concluded that beginning December 12, 2003, Adams has the residual functional capacity to perform sedentary work with certain physical limitations, he is unable to perform any of his past relevant work, and he has no transferable skills to sedentary work activity. (AR 333.) The ALJ found that effective December 12, 2003,

1  Adams had regained the ability to perform sedentary work and there were a significant
2  number of jobs in the national economy he can perform.  (*Id.*)

3  Adams appealed the March 26, 2004 partially favorable decision.  (AR 344-46.)
4  The case was remanded by the Appeals Council on November 25, 2005, due to an
5  incomplete record because the hearing recording could not be located.  (AR 347-48.)  On
6  remand, the ALJ conducted a supplemental hearing on May 22, 2006.  (AR 349.)

7  On September 13, 2006, ALJ Michael J. Cianci, Jr., issued a second partially
8  favorable decision regarding Adams' claim for Benefits.  (AR 18-30.)  The ALJ found
9  that from April 10, 2002, through August 31, 2003, the severity of Adams' low back
10 impairment met the criteria of section 1.04(A) of 20 CFR Part 404, Subpart P, Appendix
11 1 (20 CFR 404.1520(d)), and Adams was "disabled" within the meaning of the Social
12 Security Act.  (AR 22, 25-26.)  The ALJ further found that on August 31, 2003, "medical
13 improvement occurred that is related to the ability to work, and the claimant has been able
14 to perform substantial gainful activity" from August 31, 2003, through September 13,
15 2006.  (AR 22-23.)  In concluding that medical improvement occurred, the ALJ relied on
16 the medical expert's testimony that it is reasonable to expect individuals with Adams'
17 impairment to recover within twelve months.  (AR 26.)  The ALJ adopted as
18 uncontroverted by the objective medical record the medical expert's opinion that the
19 severity of Adam's lower back impairment no longer met the criteria of section 1.04 as of
20 August 31, 2003, "because the claimant had sufficient time after the disability onset date
21 to recover from lower back surgery," even though twelve months from the date of surgery
22 would have been December 12, 2003, not August 31, 2003.  (AR 27.)

23 Further, in his second decision, the ALJ found the medical improvement related to
24 the ability to work because Adams no longer has an impairment that meets or medically
25 equals a listing (20 CFR 404.1594(c)(3)(i)).  (AR 27.)  The ALJ found Adams has had the
26 residual functional capacity to perform light work activity, with lifting and carrying to 20
27 pounds occasionally and 10 pounds frequently, and sitting, standing, and walking limited
28 to a total of six hours per day beginning August 31, 2003.  (AR 28.)  Finally, the ALJ

found that beginning on August 31, 2003, Adams has been capable of performing past relevant work as a counter clerk/telephone salesman, auto parts salesman, dicing saw operator, and auto salesman.  (AR 29.)

In his second decision, the ALJ ruled that Adams' statements concerning the intensity, persistence, and limiting effects of his medically determinable impairments are not entirely credible beginning on August 31, 2003.  (AR 28.)  The ALJ said Adams' history of felony convictions could not be held against him in this matter, but found "it does not bolster his credibility in any way."  (AR 29.)  The ALJ also found treating physician Dr. Lowery's assessment "less than fully accurate" regarding Adams' pain levels after August 31, 2003, and inconsistent with Dr. Lowery's own reports of record. (*Id.*)  Although the ALJ considered third party statements of Ms. Sandvig, he stated he did not assign significant weight to her statements because he found her statement regarding Adams' use of Percocet on their January 2004 trip to Mississippi inconsistent with Adams' "testimony that he is not on any prescribed pain medications."  (*Id.*)

On April 26, 2007, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Adams' request for review.  (AR 10-15.)  On June 18, 2007, Adams commenced this action for judicial review.  (Doc. #1.)

**II.    Analysis**

Adams urges the court to reverse the Commissioner's decision and continue the award of disability benefits by holding that (1) substantial evidence does not support the end of Adams' disability, (2) the ALJ improperly rejected treating physician Dr. Lowery's opinions, (3) the ALJ erred in evaluating Dr. Anghel's opinion, (4) the ALJ erred in failing to evaluate Ms. Hymen's functional capacity assessment, (5) the ALJ committed reversible error in evaluating Adams' credibility after the closed period, and (6) the ALJ committed legal error in failing to consider the third party statements.  In the alternative, Adams requests that the court remand for rehearing with directions that the ALJ consider all evidence of record, crediting as true the opinions and testimony of Drs. Lowery and Anghel, Ms. Hymen, Ms. Sandvig, and Adams.

### A. Standard of Review

The court may set aside the Social Securities Administration's disability determination only if the determination is unsupported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### B. Substantial Evidence Does Not Support Finding Adams' Disability Ended on August 31, 2003.

The ALJ determined that from April 10, 2002, through August 31, 2003, the severity of Adams' low back impairment met Listing 1.04(A), and Adams was "disabled" within the meaning of the Social Security Act. (AR 22, 25-26.) The ALJ further found that on August 31, 2003, "medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity" from August 31, 2003, through September 13, 2006. (AR 22-23.) Considering only the evidence the ALJ found credible and adopting the ALJ's resolution of conflicting and ambiguous evidence, the court cannot find substantial evidence of record to support the ALJ's fixing the date of medical improvement as August 31, 2003.

First. the ALJ's factual finding that as of March 26, 2003, Adams "was not taking any pain medications" misstates the objective medical record. (AR 27.) The record also contradicts the medical expert's testimony that Adams "was taking no pain medications by 7/23/03" (AR 443) and the ALJ's finding that "within 7 months after undergoing lower back fusion surgery, the claimant no longer required prescription-strength pain medication, but was only using over-the-counter Advil." (AR 26.) The medical records

- 9 -

1  upon which the ALJ and the medical expert relied state that on March 26, 2003, Adams
2  "does need to take pain medicine p.r.n. braces, but does not have any more at this time."
3  (AR 175, 218.)  The examining doctor wrote:  "We'll start him on some physical therapy,
4  get some pain medicines."  On July 23, 2003, Dr. Lowery recorded that Adams had not
5  been taking any pain medications for his continued low back pain because he had been
6  incarcerated, but Adams still needed "some medications for pain."  (AR 220.)  On May
7  30, 2003, October 24, 2003, and January 6, 2004, Dr. Parikh's notes indicate Adams
8  continued needing pain medications.  (AR 223, 225, 227.)  Thus, the record shows that on
9  March 26, 2003, and July 23, 2003, Adams needed pain medication, but had been
10 temporarily without medication.  The ALJ relied on his incorrect determination that
11 Adams no longer needed pain medications as of those dates when he decided that Adams'
12 disability ended on August 31, 2003, and testimony by Adams, Ms. Sanvig, and Dr.
13 Lowery was not credible regarding Adams' condition after August 31, 2003.  (AR 26.)
14         Second, the ALJ relied on the medical expert's opinion that it is reasonable to
15 expect individuals with Adams' impairment to recover within twelve months, but limited
16 the recovery period to one year from the initial injury rather than one year from surgery.
17 (AR 26.)  The ALJ adopted the medical expert's opinion that medical improvement
18 occurred as of August 31, 2003, "because the claimant had sufficient time after the
19 disability onset date to recover from lower back surgery," even though the disability onset
20 date was eight months before the lower back surgery.  (AR 27.)  During the 2006 hearing,
21 the ALJ told the medical expert that his previous expert had recommended that "I pay a
22 close period for a year after the initial surgery, which is I think fairly consistent with what
23 you had indicated in your questionnaire...."  (AR 442.)    The medical expert's written
24 report consisted of brief phrases on one page with no explanation for his determination
25 that Adams' impairment satisfied Listing 1.04 through, but not after August 2003.   (AR
26 386.)  The ALJ questioned whether the medical expert had intended to state as he had
27 written that Adams did not meet the Listing requirement from August 2004 to the present
28 or if he really meant August 2003 to the present, and the expert indicated he meant 2003.

- 10 -

(AR 442.) In the March 2004 decision in this case, the same ALJ reviewing the same medical records for the same claimant had concluded the one-year reasonable recovery period extended from the date of surgery to December 12, 2003. (AR 330-31.) The opinions of nontreating physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record, but here nothing in the record explains why a reasonable recovery period should commence from the date of the initial injury instead of the date of surgery. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Third, the ALJ's findings supporting his conclusion that medical improvement has occurred do not support finding it occurred by a specific date before the 2006 hearing. The administrative record includes evidence Adams experienced pain and required pain medications throughout 2003 and into 2004, Adams' pain was relatively low in February 2004 but had increased in August 2004, he reported he was taking pain medications on April 5, 2006, and he testified that he was not taking any pain medications on May 22, 2006.

The court, therefore, will reverse the Commissioner's final decision based on the ALJ's hearing decision of September 13, 2006, on the ground that substantial evidence does not support finding Adams' disability ended on August 31, 2003. The court will remand this case to permit the ALJ to modify his decision based on the errors the court has identified and to take further evidence to determine whether Adams' disability has ended and, if so, when it ended. The court will rule on the other issues raised by Adams to provide guidance to the ALJ on remand.

**C.  On Remand, the ALJ May Find Adams' Testimony Regarding Pain and Severity of Impairment After a Specific Date Lacked Credibility If His Credibility Determination States Specific Findings Based on Substantial Evidence.**

"If the ALJ finds that the claimant's testimony as to the severity of [his] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

- 11 -

1  discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).
2  The court may not engage in second-guessing if the ALJ's credibility finding is supported
3  by substantial evidence in the record. *Id.* at 959.
4        The ALJ found Adams' statements concerning the limiting effects of his symptoms
5  from April 10, 2002, through August 31, 2003, "generally credible to the extent that they
6  support the closed period of disability, as determined." (AR 26.) The ALJ further found
7  Adams' "medically determinable impairments could reasonably be expected to produce
8  the alleged symptoms, but that the claimant's statements concerning the intensity,
9  persistence and limiting effects of these symptoms are not entirely credible beginning on
10 August 31, 2003." (AR 28.) To support his credibility determination, the ALJ identified
11 reported daily activities that demonstrate Adams is capable of greater levels of activity
12 than alleged and are inconsistent with his claim of continuing disability. (*Id.*) However,
13 the ALJ stated that Adams now "socializes with friends" and "plays billiards," but the
14 record shows only that as of July 17, 2003, Adams "does not leave the house unless
15 absolutely necessary" and does not play billiards anymore. (AR 119-20.) When the ALJ
16 says Adams "now" is capable of performing certain activities and does not need pain
17 medications, it is unclear whether "now" refers to August 31, 2003, or May 22, 2006. It
18 also is unclear what the ALJ meant by his statement, "The claimant's history of felony
19 convictions cannot be held against him in this matter, however, it does not bolster his
20 credibility in any way." (AR 29.)
21       The court already has found that substantial evidence does not support finding
22 Adams' disability ended on August 31, 2003. The ALJ may not just assume that one year
23 is a reasonable recovery period, and therefore medical improvement must have occurred
24 on August 31, 2003, and any contrary opinion or testimony lacks credibility. On remand,
25 the ALJ may find medical improvement occurred on a specific date if substantial
26 evidence supports such a finding. Further, the ALJ may find Adams' testimony regarding
27 his pain and severity of impairment lacks credibility if it is contradicted by his own
28 statements and the objective medical record. But if the ALJ determines that Adams'

testimony lacks credibility regarding a certain time period, the ALJ must support his determination with specific findings based on substantial evidence in the record.

### D. On Remand, the ALJ May Accept the Nontreating/Nonexamining Medical Expert's Opinions over Treating Physician Dr. Lowery's Opinions Only If the ALJ Gives Specific Reasons for Doing So That Are Based on Substantial Evidence.

The ALJ did not accept Dr. Lowery's March 22, 2004 opinion that Adams could at best do sedentary work, primarily because of pain, because the ALJ found that Adams' allegations of pain levels after August 31, 2003, were not supported by the greater objective medical record. (AR 28, 249-56.) To the extent the ALJ relied on an incorrect reading of medical source documents regarding the periods during which Adams needed pain medication, the ALJ erred by rejecting Dr. Lowery's March 22, 2004 opinion. The ALJ also did not accept Dr. Lowery's March 19, 2004 functional capacities assessment because Dr. Lowery's finding that Adams was incapable of sitting for more than ten minutes at a time or for more than one hour a day was contradicted by Adams' testimony that he sat for two-hour periods during his car trip to Mississippi in January 2004, even though Ms. Sandvig confirmed that during the trip Adams needed to change positions frequently and take pain medication. (AR 29, 372.)

More weight is given to a treating physician's opinion than to the opinion of a nontreating physician, and greater weight is given to the opinion of an examining physician than a non-examining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). The ALJ may disregard the opinion of a treating physician, whether or not it is controverted, but he may reject an uncontroverted opinion of a treating physician only for clear and convincing reasons. *Id.* at 1041. The ALJ may reject a treating physician's opinion that is controverted by a nontreating source's opinion that is not based on independent clinical findings only if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v.*

- 13 -

1  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408
2  (9th Cir. 1986); *accord Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  But the
3  conclusions of a nontreating, non-examining physician, who does not rely on independent
4  clinical findings that differ from the treating physician's findings, are not "substantial
5  evidence."  *See Orn*, 495 F.3d at 632.

6        Moreover, the ALJ may reject the opinion of any physician if the physician's
7  opinion is brief, conclusory, and inadequately supported by clinical findings.  *Thomas v.*
8  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Holohan v. Massanari*, 246 F.3d 1195,
9  1207 (9th Cir. 2001) (opinions of physician who examined claimant once and reviewing
10 physician "who merely checked boxes without giving supporting explanations" were
11 insufficient to outweigh opinion of physician who treated claimant over period of time
12 and supported opinion with explanation and treatment records).

13       **E.**    **The ALJ Did Not Err in Evaluating Dr. Anghel's Opinion.**

14       Adams contends the ALJ erred by selecting and reporting Dr. Anghel's positive
15 findings and ignoring his negative findings and diagnoses, but the ALJ did not ignore any
16 findings or diagnoses relevant to whether and when Adams' disability ended.  Dr. Anghel
17 saw Adams only once, and that was on April 5, 2006.  (AR 382.)  Although Dr. Anghel
18 was not aware of any medical improvement since December 12, 2003, he could not have
19 made any independent clinical findings regarding Adams' condition before April 5, 2006.
20 (*See* AR 385.)

21       Dr. Anghel observed that Adams was not in acute distress although Adams
22 reported pain and had limited lumbar spine range of motion, flattening of the lumbar
23 lordosis (curvature), no focal muscle atrophy or fasciculation (twitching), and no
24 evidence of lumbosacral spine deformities.  (AR 384.)  Dr. Anghel listed four points
25 under the heading "Diagnosis":  (1) failed back surgery syndrome, (2) residual
26 lumbosacral musculoskeletal dysfunction, (3) non-organic pain signs, and (4) opiate
27 dependence.  (AR 385.)  The first three diagnoses are consistent with other record
28 evidence that Adams had lower back surgery and now has pain and limited range of

- 14 -

1  motion in his lower back.  They also are consistent with the ALJ's finding that "the
2  claimant's medically determinable impairments could reasonably be expected to produce
3  the alleged symptoms, but that the claimant's statements concerning the intensity,
4  persistence and limiting effects of these symptoms are not entirely credible beginning on
5  August 31, 2003."  (AR 28.)

6       Dr. Anghel's diagnosis of opiate dependence is not consistent with the ALJ's
7  findings about Adams' use of and need for pain medication, but Adams does not argue
8  that opiate dependence is a basis for his disability.  Therefore, the ALJ's failure to
9  reference that diagnosis is irrelevant.

10       **F.    Based on Incorrect Assumptions, the ALJ Erred in Rejecting Ms. Hymen's Functional Capacity Assessment as Inconsistent with the**
11            **Greater Objective Record.**

12       An occupational therapist is not an acceptable medical source under the
13  Commissioner's regulations.  20 C.F.R. § 404.1513 (a).  In addition to acceptable medical
14  sources, however, the ALJ may consider evidence from other medical sources, including
15  therapists, to show the severity of a claimant's impairment and how it affects the
16  claimant's ability to work.  20 C.F.R. § 404.1513(d)(1).

17       The ALJ rejected Ms. Hymen's February 5, 2004 functional capacity evaluation
18  "because it is not from a medical doctor, because it was referred by counsel and not by a
19  treating physician, and because it is inconsistent with the greater objective record."
20  (AR 27.)  Ms. Hymen found Adams rated as being capable of performing sedentary work,
21  but unable to sit for more than fifteen minutes at a time, and she doubted whether he
22  could work a full eight-hour day with his pain levels.  (AR 211-12.)  She also stated that
23  Adams reported pain at the 6-7 level, and the Dallas Pain questionnaire rated him at
24  above normal for perception of how his pain affects his life.  (AR 211.)  Because the ALJ
25  is responsible for resolving ambiguities and conflicts in medical testimony, the court
26  would defer to the ALJ's resolution of ambiguities and conflicts within Ms. Hymen's
27  evaluation if the ALJ had done so.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
28  1995).

But, instead, the ALJ found Ms. Hymen's evaluation was "inconsistent with the greater objective record," because "[t]he medical expert testified that twelve months is a sufficient recovery period for the lower back injury sustained by the claimant, and that the objective record demonstrates that the claimant did in fact recover from his lower back surgery after twelve months." (AR 27.) As found above, the medical expert's opinion and the ALJ's determination that the disability ended August 31, 2003, are inconsistent with the ALJ's statement here that the twelve-month recovery period measures the time to recover from the lower back surgery, not the date of injury. To the extent this reasoning formed the basis for rejecting Ms. Hymen's evaluation, the ALJ erred in doing so.

### G. The ALJ Erred in His Weighing of Ms. Sandvig's Third Party Statement.

The ALJ may consider evidence from a claimant's friends and relatives. 20 C.F.R. § 404.1513(d)(4). The ALJ considered Ms. Sandvig's affidavit, but found her statements regarding Adams' need for pain medication in January 2004 to be inconsistent with Adams' 2006 testimony that "he is not on any prescribed medications." (AR 29, 372-73.) Obviously, the statements are not inconsistent. Moreover, as found above, the ALJ had misread medical records from 2003 as indicating Adams was not using and did not need pain medications when, in fact, they indicated he did need pain medication. Thus, the ALJ erred by not assigning significant weight to Ms. Sandvig's statements for the express reason they were "not consistent with the greater objective record."

### III. Conclusion

The Commissioner's decision that Adams' disability ended August 31, 2003, is not supported by substantial evidence. The ALJ made clear errors, regarding Adams' need for pain medication and the date on which a reasonable recovery period would end, which affected the ALJ's resolution of ambiguities and conflicts in the medical evidence and his credibility determinations. Further, the ALJ failed to distinguish between evidence of Adams' condition in 2004 and his condition in 2006. The court will not speculate as to what the ALJ would have decided if he had not made these errors.

- 16 -

1  The court will exercise its discretion to remand this case for additional evidence
2  and rehearing.  *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998).  On remand, the
3  ALJ must develop the record to determine whether the disability ended and, if so, when it
4  ended.  *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (1991) (ALJ has a duty to develop
5  the record in social security and disability cases).
6  IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment
7  and/or Remand (Doc. #22) is GRANTED in that the decision of the Commissioner is
8  reversed and remand is ordered.
9  IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment
10 (Doc. # 24) is DENIED.
11 IT IS FURTHER ORDERED that the clerk enter judgment remanding this action
12 to the Social Security Administration for further proceedings in accordance with this
13 order.  The clerk shall terminate this case.
14 DATED this 14th day of April, 2008.

_____
Neil V. Wake
United States District Judge

- 17 -